UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMINION CAPITAL LLC,

                   Plaintiff,

       v.

RELIZ LTD. d/b/a BLOCKFILLS.COM,

                  Defendant.

Case No. 1:26-cv-01672 (MKV)(VF)

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PRE-JUDGMENT ATTACHMENT

SULLIVAN & WORCESTER LLP

David Danovitch
Anna Lea McNerney
Christopher Shields
1251 Avenue of the Americas, 19th Floor
New York, New York 10020
Telephone: (212) 660-3000

Michael T. Dyson (*pro hac vice pending*)
1666 K Street, NW, 7th Floor
Washington, D.C. 20006
Telephone: (202) 775-1200

*Attorneys for Plaintiff Dominion Capital, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

A.    The Parties and Their Relationship ......................................................................... 2

B.    Blockfills' Suspension of Withdrawals .................................................................... 3

C.    Blockfills' Admission of Misappropriation of Customer Assets ............................ 3

D.    Blockfills' Intentional Concealment of Commingling and Misappropriation ......... 5

E.    Blockfills' Admission of Past and Ongoing Misappropriation ............................... 6

F.    Dominion's Redemption Request and Defendant's Non-Response......................... 7

G.    Dominion's Damages .............................................................................................. 8

LEGAL STANDARD ........................................................................................................ 8

A.    Temporary Restraining Order and Preliminary Injunction .................................... 8

B.    Pre-Judgment Attachment ....................................................................................... 9

ARGUMENT ................................................................................................................... 10

I.    DOMINION IS ENTITLED TO A TEMPORARY RESTRAINING ORDER
      AND PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65 ............... 10

      A.    DOMINION IS LIKELY TO SUCCEED ON THE MERITS BECAUSE
            BLOCKFILLS HAS ADMITTED TO CONDUCT THAT
            CONSTITUTES FRAUDULENT CONCEALMENT, BREACH OF
            CONTRACT, AND CONVERSION ................................................................. 10

            i.    Fraudulent Concealment:  Dominion Pleads Each Element with
                  Particularity............................................................................................ 11

            ii.   Breach of Contract: Based on Blockfills' Own Admissions,
                  Dominion Has Shown that It Is Likely to Prevail on its Claim
                  against Blockfills for Violating Its Covenant to Keep Funds
                  Segregated.............................................................................................. 13

            iii.  Conversion: Dominion Pleads a Superior Right to Possession and
                  Unauthorized Dominion By Blockfills .................................................... 13

iv. Other Claims: Dominion Establishes a High Likelihood of Success ....... 14

B. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF ................................................................................ 16

C. BALANCE OF EQUITIES AND PUBLIC INTEREST TIPS DECIDEDLY IN DOMINION'S FAVOR ............................................................ 18

D. DOMINION IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BASED ON FED. R. CIV. P. 65 ....................................................................................................... 19

II. DOMINION IS ENTITLED TO PRE-JUDGMENT ATTACHMENT UNDER CPLR SECTIONS 6201(1) AND 6201(3) ...................................................... 20

CONCLUSION .......................................................................................................... 21

## **TABLE OF AUTHORITIES**

### **Cases**

*725 Eatery Corp. v. City of N.Y.*,
    408 F. Supp. 3d 424 (S.D.N.Y. 2019) ...........................................................................10, 16

*AIM Intern. Trading LLC v. Valcucine SpA.*,
    188 F. Supp. 2d 384 (S.D.N.Y. 2002) .................................................................................9

*Airbnb, Inc. v. City of New York*,
    373 F. Supp. 3d 467 (S.D.N.Y. 2019) ...............................................................................10

*Ambrosius v. Chicago Athletic Clubs, LLC*,
    2021 IL App (1st) 200893, 203 N.E.3d 239 (1st Dist. 2021)..............................................15

*Berg v. Vill. of Scarsdale*,
    No. 18-cv-1002 (NSR), 2018 WL 740997 (S.D.N.Y. Feb. 6, 2018) ....................................8

*Brenntag Intern. Chemicals, Inc. v Bank of India*,
    175 F.3d 245 (2d Cir 1999) ...............................................................................................17

*BSH Hausgeräte GMBH v. Kamhi*,
    282 F. Supp. 3d 668 (S.D.N.Y. 2017) ...............................................................................20

*Capital Ventures Int'l v. Republic of Argentina*,
    652 F.3d 266 (2d Cir. 2011) ..............................................................................................20

*Clark Street Wine and Spirits v. Emporos Sys. Corp.*,
    754 F. Supp. 2d 474 (E.D.N.Y. 2010)................................................................................14

*CRP/Extell Parcel I, L.P. v. Cuomo*,
    394 F. App'x 779 (2d Cir. 2010).........................................................................................17

*Feis Equities, LLC v. Sompo Int'l Holdings, Ltd.*,
    2020 IL App (1st) 191072, 178 N.E.3d 650 (1st Dist. 2020)..............................................15

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
    594 F. Supp. 2d 308 (E.D.N.Y. 2009)............................................................................9, 10

*DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*,
    24-1217, 2025 WL 863338 (2d Cir. Mar. 19, 2025)..........................................................11

*Dreni v. PrinterOn Am. Corp.*,
    486 F. Supp. 3d 712 (S.D.N.Y. 2020)................................................................................14

*Grant River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) ................................................................................................17

*Eve of Milady v. Impression Bridal, Inc.*,
  957 F. Supp. 484 (S.D.N.Y. 1997) ............................................................................11

*Habitat for Horses v. Salazar,*
  745 F. Supp. 2d 438 (S.D.N.Y. 2010) ........................................................................16

*Hoblock v. Albany Cty. Bd. Of Elections*,
  422 F.3d 77 (2d. Cir. 2005) .........................................................................................9

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
  534 F. Supp. 3d 326 (S.D.N.Y. 2021) ......................................................................14

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
  43 F.4th 263 (2d Cir. 2022) .......................................................................................20

*L.I. City Ventures v Urban Compass, Inc.*,
  18 CIV. 5853 (PGG), 2019 WL 234030 (S.D.N.Y. Jan. 16, 2019) ...........................9

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n*,
  965 F.2d 1224 (2d Cir. 1992) ...............................................................................9, 18

*L.V.M. v. Lloyd*,
  318 F. Supp. 3d 601 (S.D.N.Y. 2018) .......................................................................11

*Marsh & McLennan Agency, LLC v. Alliant Ins. Servs.*,
  No. 1:24-cv-9914-MKV, 2025 WL 304500 (S.D.N.Y. Jan. 27, 2025)........................9

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
  883 F.3d 31 (2d Cir. 2018) ...........................................................................................9

*Patsy Widakuswara v. Lake*,
  773 F. Supp. 3d 46 (S.D.N.Y. 2025) .........................................................................18

*Sanchez v. Am. Express Travel Related Servs. Co.*,
  372 Ill. App. 3d 449 (1st Dist. 2007).........................................................................15

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
  487 F.3d 89 (2d Cir. 2007) .........................................................................................14

*Travelers Indem. Co. v. CDL Hotels USA, Inc.*,
  322 F. Supp. 2d 482 (S.D.N.Y. 2004) .......................................................................11

*V&A Collection, LLC v. Guzzini Props.*,
  46 F.4th 127 (2d Cir. 2022) .......................................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................................................18

## **Statutes**

815 ILCS 505/2 ..................................................................................................................15

CPLR 6201 ................................................................................................ *passim*

CPLR 6212 ....................................................................................................1, 10, 20

Fed. R. Civ. Proc. 9(b) ........................................................................................11

Fed. R. Civ. Proc. 64 ....................................................................................1, 10, 21

Fed. R. Civ. Proc. 65 ......................................................................................1, 9, 19

Pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure and sections 6201 and 6212 of the New York Civil Practice Law and Rules ("CPLR"), plaintiff Dominion Capital LLC ("Dominion" or "Plaintiff"), by its attorneys, Sullivan & Worcester LLP, hereby respectfully moves the Court for entry of an order: (a) granting a temporary restraining order and preliminary injunction enjoining Defendant Reliz Ltd. d/b/a Blockfills.com ("Blockfills" or "Defendant") from dissipating, transferring, encumbering, or otherwise disposing of any assets or property owned by Dominion which are in Blockfills' possession, custody or control; (b) granting pre-judgment attachment of Blockfills' property pursuant to CPLR sections 6201(1) and 6201(3); and (c) granting such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

This motion arises from Blockfills' admitted commingling and misappropriation of customer assets (including Dominion's) in express violation of its contractual obligations and custodial duties, Blockfills' fraudulent concealment of that misappropriation for approximately six months, and Blockfills' ongoing and unlawful refusal to return Dominion's assets despite formal demand.  As further stated in Dominion's Complaint (ECF No. 1), Blockfills has unilaterally suspended all customer withdrawals, admitted to using customer assets for unauthorized corporate expenses and losses, and continues to exercise unauthorized dominion and control over Dominion's assets. Immediate injunctive relief and attachment are necessary to prevent irreparable harm to Dominion and to preserve the status quo pending resolution of this action.

**FACTUAL BACKGROUND**[1]

A.    **The Parties and Their Relationship**

Dominion is a private limited liability company incorporated in Connecticut with its headquarters in New York City.  Gurevich Aff. ¶3.  Blockfills is a crypto brokerage and trading platform incorporated in the Cayman Islands with its headquarters in Chicago, Illinois.

In April 2021, Blockfills accepted Dominion as a customer, approved Dominion's account, and assigned it an account number.  The account-opening documentation included two signed agreements: the Blockfills Customer Account Application (the "Application Agreement") and the Electronic All-Inclusive Trading Agreement (the "Trading Agreement") (collectively, the "Agreements").  Gurevich Aff. ¶¶5-7 and Exhibit 1 (Application Agreement) and Exhibit 2 (Trading Agreement).

Pursuant to its express terms, the Application Agreement is a legally binding contractual agreement between the parties.  Gurevich Aff. Exhibit 1 at page 10.  It contains a critical provision requiring Blockfills to keep customer assets segregated from the working capital of Blockfills.  Specifically, the Application Agreement provides that money deposited by customers (here, Dominion) will be segregated from the working capital of Blockfills.  *Id*. at pages 10-11.  This segregation requirement was a material term of the contract and formed the basis of Dominion's decision to entrust its assets with Blockfills.  Gurevich Aff. ¶9.

After the account opening, over time, Dominion made several deposits of Bitcoin and regularly traded on Blockfills' platform in accordance with the Agreements.  Gurevich Aff. ¶10.

---

[1] Dominion respectfully refers the Court to the Complaint dated February 27, 2026 (ECF Doc. No. 1, the "Complaint" or "Compl.") and to the Affidavit of Gennadiy Gurevich dated February 27, 2026, and filed concurrently with this motion (the "Gurevich Aff."), for a full recitation of the facts.

As of February 11, 2026, Dominion had 70.5556739914 Bitcoin (the "Dominion Property Assets") and USD 186.23 in its account with Blockfills.  *Id.* ¶11.

### B.    Blockfills' Suspension of Withdrawals

At some point during the week of February 2-6, 2026, Blockfills suddenly suspended client withdrawals for all of its customers.  Blockfills did not provide Dominion advance notice or any warning of the suspension of withdrawals.[2]  Gurevich Aff. ¶¶12-13.

In a statement on February 11, 2026, Blockfills explained:

> In light of recent market and financial conditions, and to further the protection of clients and the firm, BlockFills took the action last week of temporarily suspending client deposits and withdrawals.  . . .
>
> BlockFills is committed to transparency in its communications and to the protection of its clients. Management has been working hand in hand with investors and clients to bring this issue to a swift resolution and to restore liquidity to the platform. The firm has also been in active dialogue with our clients throughout this process, including information sessions and an opportunity to ask questions of senior management. BlockFills is working tirelessly to bring this matter to a conclusion and will continue to regularly update our clients as developments warrant.

*See*  https://www.blockfills.com/2026/02/11/blockfills-statement-on-recent-temporary-suspension-on-client-deposits-withdrawals-02-11-2026/ (last accessed on March 2, 2026).

As a result of the suspension, Dominion was (and remains) prevented from accessing, withdrawing or otherwise exercising its possessory rights over the Dominion Property Assets, even though such assets are owned by Dominion.  Gurevich Aff. ¶48.

### C.    Blockfills' Admissions of Misappropriation of Customer Assets

When Dominion learned of Blockfills' suspension of customer withdrawals, on February 6, 2026, Dominion requested a call with Blockfills.  Gurevich Aff. ¶14.  On February 7, 2026,

---

[2] Based on a recent news article, however, it was reported by an anonymous source that Blockfills allegedly urged some clients to withdraw their crypto assets before the platform halted deposits and withdrawals.  See https://www.coindesk.com/business/2026/02/25/blockfills-co-founder-and-ceo-nicholas-hammer-has-stepped-down-amid-usd75-million-lending-losses (last accessed March 2, 2026).  If accurate, it would further support Dominion's claims, including its fraudulent concealment claim.

Dominion's Gennadiy and Mikhail Gurevich participated in a call with Blockfills' Joe Perry and Gordon Wallace and Blockfills' advisor, Mark Renzi from Berkeley Research Group, LLC ("BRG").  *Id*. ¶15.

On this call, Blockfills admitted to having commingled customer assets and having a balance sheet shortfall.  *Id*.  This was the first time that Blockfills disclosed the commingling and misappropriation of customer assets to Dominion.  *Id*. ¶16.

The following week, in two separate "town hall" meetings held with its customers on February 9, 2026 ("Townhall 1") and February 20, 2026 ("Townhall 2"), Blockfills again admitted to the commingling and misappropriating of customer assets to cover its own expenses and losses. Blockfills also made statements confirming that the commingling and misappropriation are ongoing.  Gurevich Aff. ¶¶17-19.

Specifically, Blockfills admitted during Townhall 2 that its customers' digital assets were "not segregated per client" and were "not segregated on separate wallets per customer" but were commingled into "one balance sheet."  Gurevich Aff. ¶20.

Blockfills further admitted that it used these commingled customer funds/assets to cover its own operational expenses and losses, including (without limitation):

        a.  expenses for various arbitrations, including for a settlement with Celsius Network, a cryptocurrency platform and lender to Blockfills that prevailed in several arbitrations against Blockfills;

        b.  expenses for the purchase of crypto mining equipment;

        c.  losses in connection with crypto mining operations;

        d.  losses in connection with crypto mining hedging activities; and

    e.   losses in connection with unsecured loans made to several entities, including to Aexa Digital Infrastructure, Babel, and CoinSource.

Gurevich Aff. ¶21.

Indeed, during Townhall 1, Blockfills showed a slide of Blockfills' "material losses" which listed these and other positions. Gurevich Aff. ¶¶22-23 and Exhibit 3 (screen capture of "material losses" slide from Townhall 1).

By Blockfills' own admission during the February 7 call and the two town halls, the payment of these expenses and losses caused a balance sheet shortfall of $77 million as of December 31, 2025. Gurevich Aff. ¶24.

These uses of customer assets (including the Dominion Property Assets) were unauthorized and violated the Application Agreement's requirement that customer funds be segregated and used only in connection with customer trades. Gurevich Aff. ¶25 and Exhibit 1.

**D.      Blockfills' Intentional Concealment of Commingling and Misappropriation**

Making matters worse, Blockfills intentionally concealed its misuse of funds from customers, including Dominion. According to Blockfills' own explanations at Townhall 1, Blockfills' board of directors (the "Board") realized the misappropriation of customer assets in or around August 2025. Gurevich Aff. ¶¶26-28 and Exhibit 4 (screen capture "timeline" from Townhall 1).

As Blockfills itself explained during Townhall 1, following the Board's discovery of the misappropriation, Blockfills engaged restructuring advisors—including the Katten Muchin Roseman law firm and BRG—and developed a preliminary restructuring plan with the assistance of these advisors. Gurevich Aff. ¶29 and Exhibit 4.

However, despite discovering the misappropriation in August 2025, Blockfills did not inform Dominion of the misappropriation in August 2025 or at any other point prior to February 2026.  Gurevich Aff. ¶¶30-31.

In fact, despite knowingly concealing the misappropriation and balance sheet shortfall, Blockfills continued to solicit trades from Dominion.  For example, on November 12, 2025, Gordon Wallace—the President and co-founder of Blockfills, and a member of its Board—contacted Dominion and suggested a Bitcoin options trade.  Gurevich Aff. ¶32.[3]

In the end, Blockfills intentionally concealed the misappropriation from Dominion for approximately six months, from August 2025 through early February 2026.  *See*, e.g., Gurevich Aff. ¶ 37.  Throughout this period, Blockfills continued to retain possession of the Dominion Property Assets and, upon information and belief, used them to cover its own expenses and losses. *Id*. ¶47.

### E.    Blockfills' Admission of Past and Ongoing Misappropriation

By email of February 6, 2026, Dominion was invited to Townhall 1 by Joe Perry, interim CEO of Blockfills.  Gurevich Aff. ¶33 and Exhibit 5 (Blockfills' Townhall 1 invitation).  In the email, Mr. Perry referred to the "temporary" suspension of client withdrawals and invited a select number of clients to an "informational town hall for our clients to share updates on BlockFills' current status, provide clarity on next steps, and address your questions directly."  Exhibit 5.

Townhall 1 was conducted via Zoom on Monday, February 9, 2026, at 10 a.m. ET. Gurevich Aff. ¶35.  An estimated 44 participants attended the Zoom meeting.  From Blockfills' side, Joe Perry and Gordon Wallace attended, together with Blockfills' restructuring advisor, Mark

---

[3] The Complaint ¶36 contains a typo: the trade solicitation occurred on November 12, 2025 and not February 12, 2025. *See* Gurevich Aff. ¶32.

Renzi from BRG. For Dominion, its managing members, Gennadiy Gurevich and Mikhail Gurevich, attended. *Id*. ¶36.

During Townhall 1, as on the Dominion-Blockfills call on February 7, 2026 (*supra* 4-5), Blockfills representatives explained that Blockfills had commingled customer assets and company assets on one balance sheet. They admitted that Blockfills had used these commingled assets to cover operational expenses and losses as described above (*supra* 5-6). Gurevich Aff. ¶¶37-38 and Exhibit 3.

To emphasize these admissions, Blockfills even presented slides showing, among other things, a timeline of when the commingling and shortfall was discovered in August 2025, and an overview of Blockfills' operational costs and losses that were paid with the commingled customer assets. Gurevich Aff. and Exhibits 3 and 4.

On Friday, February 20, 2026, at 10 a.m. ET, Blockfills conducted Townhall 2. Gurevich Aff. ¶39. The meeting was again led by Perry and Wallace from Blockfills and Renzi from BRG; Mr. Gurevich joined on behalf of Dominion. *Id*. ¶40.

At Townhall 2, Blockfills confirmed its previous admissions, reiterating that it had commingled customer assets on one single balance sheet and used them to pay for certain material expenses and losses which had left a balance sheet shortfall of $77 million. *Id*. ¶41.

During Townhall 2, Blockfills was asked if it is continuing to use customer assets to pay for operating, legal, consulting and restructuring expenses. Blockfills did not deny the ongoing use of commingled customer funds for operational expenses and only replied that "the company is paying for restructuring expenses". *Id*. ¶42.

### F.    Dominion's Redemption Request and Defendant's Non-Response

Blockfills' suspension of customer withdrawals in early February 2026 is all the more concerning in light of Blockfills' nearly simultaneous disclosure regarding the misappropriation

of customer funds and assets, calling into question whether Dominion will ever regain access to its Dominion Property Assets, or whether Blockfills will deplete them by improperly using them for its own purposes, including by transferring them to third-party creditors to satisfy its debts or loans.

Via written notice on February 11, 2026, Dominion formally requested the redemption for the full amount of the Dominion Property Assets in Dominion's account with Blockfills.  Gurevich Aff. ¶44 and Exhibit 6 (email chain with Dominion redemption request).  On February 12, 2026, Mr. Renzi (BRG) replied that "We are working on a comprehensive solution. We cannot treat one customer differently than another."  *Id*.

As of the filing of this Motion, Blockfills has not returned the Dominion Property Assets, or any portion thereof.  Gurevich Aff. ¶47.

### G.    Dominion's Damages

As a result of Defendant's conduct, Dominion has been unable to access the Dominion Property Assets held in its account with Defendant.  Gurevich Aff. ¶48.  The value of the Dominion Property Assets is substantial, and includes over 70 Bitcoin (which were valued at roughly $8.6 million in August 2025).  Compl. ¶74.  In addition to the value of the Dominion Property Assets themselves, Dominion has also suffered additional damages, including lost business, as well as investment and trading opportunities, due to its inability to access its Bitcoin.  Dominion has suffered other consequential damages, including collection costs, as a result of Blockfills' misconduct.

### LEGAL STANDARD

### A.    Temporary Restraining Order and Preliminary Injunction

The same standard applies for an application for a preliminary injunction and a temporary restraining order.  *Berg v. Vill. of Scarsdale*, No. 18-cv-1002 (NSR), 2018 WL 740997, *1

(S.D.N.Y. Feb. 6, 2018) (citing *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992) (the "standards which govern consideration of an application for a temporary restraining order [] are the same standards as those which govern a preliminary injunction.")).   A party seeking a temporary restraining order or preliminary injunction must demonstrate: "(1) irreparable harm; (2) 'either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party'; and (3) that a preliminary injunction is in the public interest."  *Marsh & McLennan Agency, LLC v. Alliant Ins. Servs.*, No. 1:24-cv-9914-MKV, 2025 WL 304500, at *4 (S.D.N.Y. Jan. 27, 2025) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)); *see also* Fed. R. Civ. Proc. 65.   "Where the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that maintains the status quo), the likelihood-of-success standard is elevated: the movant must show a clear or substantial likelihood of success."  *L.I. City Ventures v Urban Compass, Inc.*, 18 CIV. 5853 (PGG), 2019 WL 234030, at *8 n. 10 (S.D.N.Y. Jan. 16, 2019) (quoting *Hoblock v. Albany Cty. Bd. Of Elections*, 422 F.3d 77, 97 (2d. Cir. 2005) (internal quotation marks removed)).   The decision to award a preliminary injunction "rests in the sound discretion of the district court."   *AIM Intern. Trading LLC v. Valcuine SpA.*, 188 F. Supp. 2d 384, 386-87 (S.D.N.Y. 2002).

As discussed below, Dominion is entitled to a temporary restraining order and prohibitory injunction against Blockfills to maintain the status quo and prevent further losses of its assets pending the resolution of the case.

### B.    Pre-Judgment Attachment

"Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve that property for eventual execution."  *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009) (internal citations omitted).

Fed. R. Civ. Proc. 64 permits federal litigants to seek an order of attachment to secure satisfaction of a potential judgment in accordance with the laws of the state in which the district court sits.

Applicable here, New York law permits pre-judgment attachment when certain procedural and substantive requirements have been met.  In particular, a plaintiff may obtain an order of attachment if it demonstrates that (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant, either (a) is "a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state" (CPLR 6201[1]) or (b) "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts" (CPLR 6201[3]), and (4) the amount demanded from the defendant is greater than the amount all counterclaims known to plaintiff.  CPLR §§ 6201, 6212(a); *see also DLJ Mortg. Capital*, 594 F. Supp. 2d at 318-19.  As further argued below (*infra* 21), Dominion satisfies these requirements and is therefore entitled to an order of pre-judgment attachment.

## ARGUMENT

I.    **DOMINION IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 65**

A.    **DOMINION IS LIKELY TO SUCCEED ON THE MERITS BECAUSE BLOCKFILLS HAS ADMITTED TO CONDUCT THAT CONSTITUTES FRAUDULENT CONCEALMENT, BREACH OF CONTRACT, AND CONVERSION**

"To establish a likelihood of success on the merits, Plaintiffs 'need not show that success is an absolute certainty,' but only that 'the probability of [their] prevailing is better than fifty percent.'"  *725 Eatery Corp. v. City of N.Y.*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) (quoting *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 480 (S.D.N.Y. 2019)).  "Further, Plaintiffs need not demonstrate a likelihood of success on the merits of every claim—rather, they need only

'show a likelihood of success on the merits of at least one of [their] claims.'" *Id.* (quoting *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018)); *see also Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 487 (S.D.N.Y. 1997) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits on one of the claims.").

Here, Blockfills has expressly admitted to the following misconduct: (a) commingling of customer assets (despite a contractual obligation to keep customer assets segregated), (b) misappropriation of customer assets and funds for Blockfills' operational costs and losses, and (c) having intentionally kept the misappropriation a secret from its customers (including Dominion) for approximately six months.  Based on these admissions alone, Dominion can demonstrate a clear and substantial likelihood of success on the merits of all of its claims.

### i.    *Fraudulent Concealment: Dominion Pleads Each Element with Particularity*

To state a claim for fraudulent concealment, a plaintiff must plead: (1) a duty to disclose, (2) knowledge of material facts by the party bound to disclose, (3) scienter, (4) reliance, and (5) damages.  *DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*, 24-1217, 2025 WL 863338, at *3 (2d Cir. Mar. 19, 2025).  Fraudulent concealment must also be pleaded with particularity under Federal Rule of Civil Procedure 9(b).  *Id.*  Dominion pleads all of these requirements in its Complaint. Compl. ¶¶ 53-76.

"[A] duty to disclose arises only when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Travelers Indem. Co. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 499 (S.D.N.Y. 2004). In particular, a duty to disclose exists under the "special facts" doctrine "where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Id.*

Here, Blockfills had a duty to disclose based on its confidential relationship with Dominion because it is holding Dominion's assets and funds on Blockfills' trading platform. Further, under the "special facts doctrine," Blockfills also had a duty to disclose because it had superior knowledge of customer commingling and misappropriation by Blockfills which was not available to Dominion, and Blockfills knew that Dominion was acting on mistaken knowledge.

Based on Blockfills' own admission, its Board discovered the commingling and misappropriation of customer assets for Blockfills' own operational costs and losses in August 2025. Yet, Blockfills did not disclose it to Dominion until February 9, 2026, after months of concealment. In fact, Blockfills intentionally concealed the misuse while secretly working with restructuring advisors and while continuing to try and solicit customer trading activity. *Supra* 6-7. There is no plausible lawful explanation for this continued intentional concealment, which indicates that Blockfills has a fraudulent state of mind.

As set forth in the Complaint and in the Gurevich Affidavit, Dominion reasonably and foreseeably relied upon Blockfills' promise that it would keep Dominion's assets segregated. In the absence of disclosures to the contrary (none of which were made until this past month), Dominion reasonably believed that Blockfills was acting as a faithful custodian and was not commingling or misusing the Dominion Property Assets. Moreover, Dominion further demonstrates that, had it known of the commingling and misappropriation, it would have withdrawn its Bitcoin. Blockfills seemingly was aware of this, as it purported to suspend withdrawals (thereby preventing Dominion acting) before it finally disclosed the commingling and misappropriation. *Supra* 4-5. These allegations more than suffice to satisfy reliance and causation for a concealment-based fraud theory.

12

Dominion also pleads that it has been deprived of access to 70.5556739914 Bitcoin of which it is indisputably the lawful owner (which are collectively worth millions of dollars), and further that it has suffered additional consequential damages, including lost investment and trading opportunities. *Supra* 9.

In sum, Dominion has pleaded the required elements for fraudulent concealment and has particularized the "who, what, when" concealment facts sufficient to show a clear and substantial likelihood of success on the merits of fraudulent concealment.

> ### ii.   Breach of Contract: Based on Blockfills' Own Admissions, Dominion Has Shown that It Is Likely to Prevail on its Claim against Blockfills for Violating Its Covenant to Keep Funds Segregated

Dominion has sufficiently alleged that, pursuant to a binding Application Agreement, Blockfills warranted and was contractually obligated to keep assets deposited by customers segregated from its own working capital (absent execution of trades, and even then, only the amounts to be traded could be moved). *Supra* 3 and Compl. ¶¶14-15.

Dominion has presented well-pled allegations (and Blockfills has admitted during two separate town halls) that customer assets were not segregated per customer and instead were commingled into one balance sheet and that Blockfills used commingled customer assets to pay its own expenses and losses. *Supra* 5-6.

On those allegations, Blockfills' admitted commingling and use of customer assets for its own expenses is directly contrary to its contractual obligation to segregate customer assets from working capital.

> ### iii.   Conversion: Dominion Pleads a Superior Right to Possession and Unauthorized Dominion By Blockfills

Dominion pleads that it owns and has the superior right to the 70.5556739914 Bitcoin in its Blockfills account (i.e., the Dominion Property Assets), that it demanded redemption of the

Dominion Property Assets on February 11, 2026, and that Blockfills unlawfully refused and continues to block withdrawals via a purported platform-wide suspension, to the detriment of Dominion's superior interest in its property. *Supra* 4 and 9. Cryptocurrency is a property asset, known as a decentralized digital asset, rather than fiat currency, known as centralized money, and Dominion's Bitcoin was, therefore, specifically identifiable. *Cf. In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 329 (S.D.N.Y. 2021) (describing cryptocurrency as "asset" distinct from fiat currency).

Dominion further pleads that Blockfills exercised unauthorized dominion by using commingled customer assets to pay Blockfills' own expenses and losses, and by continuing to deplete customer assets. *Cf. V&A Collection, LLC v. Guzzini Props*., 46 F.4th 127, 134 (2d Cir. 2022) (affirming denial of motion to dismiss conversion claim); *Clark Street Wine and Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010) (denying motion to dismiss conversion claim in connection with electronic records).

### iv.    *Other Claims: Dominion Establishes a High Likelihood of Success*

On its claim for breach of the implied covenant of good faith and fair dealing, Dominion pleads a bad-faith deprivation by Blockfills of the fruits of the parties' Agreements. *Dreni v. PrinterOn Am. Corp*., 486 F. Supp. 3d 712, 729 (S.D.N.Y. 2020) (holding that the implied covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.") (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc*., 487 F.3d 89, 98 (2d Cir. 2007)).   In particular, Dominion alleges that, after promising segregation and providing a trading platform for customer access, Blockfills concealed a massive shortfall and misuse of customer assets, then froze withdrawals without notice and refused Dominion's redemption request, causing damages to Dominion.  To state the obvious: Dominion agreed to open an account at Blockfills and to store

the Dominion Property Assets in that account with the understanding that Blockfills would act with due care and fidelity as a custodian of the account; Blockfills had no right (in contract or otherwise) to deprive Dominion of and/or deplete the Dominion Property Assets.

Even if Dominion had not sufficiently pled the elements of its contractual relationship with Blockfills (but it has done so), Dominion nonetheless would have a meritorious claim for unjust enrichment in the alternative because it conferred benefits on Blockfills by depositing its property with Blockfills and by generating revenue/fees for Blockfills through trading.   By purporting to suspend withdrawals and thus depriving Dominion of its own property (and further to the extent it used the Dominion Property Assets for its own corporate purposes), Blockfills has effectively hijacked the Dominion Property Assets for itself, thereby unjustly enriching itself at Dominion's expense.

Dominion also is likely to succeed on its claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which prohibits "unfair or deceptive acts or practices" in the conduct of trade or commerce.   815 ILCS 505/2. To state a claim under ICFA, the plaintiff must demonstrate: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the deception occurred in the course of trade or commerce; (4) actual damages; and (5) proximate causation. *Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893, 203 N.E.3d 239, 249 (1st Dist. 2021); *Sanchez v. Am. Express Travel Related Servs. Co.*, 372 Ill. App. 3d 449, 456-57 (1st Dist. 2007); *Feis Equities, LLC v. Sompo Int'l Holdings, Ltd.*, 2020 IL App (1st) 191072, 178 N.E.3d 650, 665 (1st Dist. 2020).   Dominion pleads this statutory claim against Chicago-based Blockfills based on concealment, unfair withdrawal suspension, and refusal to return assets.   These actions by Blockfills constitute deceptive or unfair acts or practices in the course of trade or commerce, and

Blockfills intended that Dominion rely on these acts. Indeed, Dominion reasonably relied on Blockfills not to misappropriate its funds and to immediately disclose any misappropriation of its funds. Blockfills' deceptive and unfair acts caused damages to Dominion.

In sum, Dominion can demonstrate a high likelihood of success on the merits for all of its claims, even though it need only show a likelihood of success on the merits of at least one of its claims to warrant the injunctive relief sought hereby. *Cf. Eve of Milady*, 957 F. Supp. at 487.

### B.    PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

"A plaintiff must demonstrate that absent preliminary injunctive relief, it is likely to 'suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" *725 Eatery*, 408 F. Supp. 3d at 458 (quoting *Habitat for Horses v. Salazar*, 745 F. Supp. 2d 438, 448 (S.D.N.Y. 2010)). "Nevertheless, a plaintiff need only show a *threat* of irreparable harm, not that irreparable harm already [has] occurred." *Id*. (emphasis in original) (internal quotations omitted).

Dominion's harm is not contingent or hypothetical: Dominion pleads that Blockfills has suspended client withdrawals and thereby is currently preventing Dominion from accessing or withdrawing its own property without lawful justification (70.5556739914 Bitcoin). *Supra* 9. Dominion also pleads that Blockfills has admitted to its misconduct, including its statements during two separate town halls that customer digital assets were not segregated per customer and were commingled on one balance sheet, and that Blockfills had used the commingled customer assets to pay its own corporate expenses and losses. *Supra* 4-8. Critically, Dominion pleads that Blockfills did not deny that it continues to use customer assets for its own operating expenses, thus supporting that the misuse is ongoing. Gurevich Aff. ¶42.

Under the Second Circuit's standard, these allegations establish an injury that is "actual and imminent," because the deprivation of access and the alleged misuse are occurring now, not at some uncertain future time.  Indeed, the threatened injury is actual and imminent because Dominion alleges ongoing conduct that threatens continued depletion of the very assets Dominion seeks returned and/or to be protected from further dissipation by Blockfills.

Nor is this a case where Dominion has an adequate remedy at law absent injunctive relief. Ordinarily, where "money injury can be estimated and monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Intern. Chemicals, Inc. v Bank of India*, 175 F.3d 245, 249-50 (2d Cir 1999).  However, courts in this district find irreparable harm in connection with an action for money damages "where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781-82 (2d Cir. 2010); *see also Brenntag*, 175 F.3d at 250.  "Predicate to injunctive relief under this exception, a movant must show that the risk of insolvency is likely and imminent." *Id*. (citing *Grant River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 66 (2d Cir. 2007)).  That risk and imminency of insolvency are present here, as plainly shown by Blockfills' own admissions regarding its losses and shortfalls, as well as its improper use of customer funds in an attempt to meet its own obligations.

Here, whether Dominion is deemed to seek its own non-monetary property (the Bitcoin) or, in the alternative, money damages, irreparable harm is likely because Blockfills either already is insolvent or is on the brink of insolvency.  Dominion's complaint pleads precisely the kinds of concrete facts that support an inference of likely and imminent financial distress and dissipation risk: Blockfills admitted a $77 million balance sheet shortfall as of December 31, 2025.  *Supra* 5, 7.  Blockfills has also admittedly retained "restructuring" professionals, including BRG and

restructuring counsel, and contemporaneously froze customer withdrawals. *Supra* 3, 6-7. These facts, taken together with Blockfills' admissions of commingling and misuse of customer assets, support that, absent immediate court intervention, there is a substantial chance that Blockfills will further dissipate the Dominion Property Assets and that Dominion will be unable to recover its Bitcoin (or its value) at the end of the case because Blockfills will have insufficient assets remaining to satisfy a judgment, including by its admitted use of customer assets to pay its own legal and operational costs. Moreover, there is also a substantial likelihood that, as an offshore entity, Blockfills will transfer or place any assets in its custody and control beyond Dominion's reach. That is the core irreparable-harm concern recognized by the Second Circuit. *Cf. Brenntag*, 175 F.3d at 250. Injunctive relief to protect Dominion's interests is needed to avert such irreparable harm.

### C. BALANCE OF EQUITIES AND PUBLIC INTEREST TIPS DECIDEDLY IN DOMINION'S FAVOR

"'[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief . . . pay[ing] particular regard for the public consequences' that would result in granting the emergency relief sought." *Patsy Widakuswara v. Lake*, 773 F. Supp. 3d 46, 61 (S.D.N.Y. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). This factor, too, favors Dominion.

As set forth above, Dominion will suffer substantial and irreparable harm if the Dominion Property Assets are dissipated or transferred beyond the reach of this Court. Blockfills, by contrast, will suffer minimal hardship from being required to preserve and segregate the Dominion Property Assets as it was contractually obligated to do from the outset. Blockfills has already breached its contractual duty to segregate customer funds. Requiring it to preserve Dominion's assets pending resolution of this action merely enforces the status quo that should have existed all along. Indeed,

any hardship to Blockfills results from its own wrongful conduct and should not be held against Dominion.

The public interest also strongly favors granting the requested relief.  The public has an interest in preventing fraud and misappropriation of customer funds by financial intermediaries. The public and financial market also have an interest that a cryptocurrency platform will safeguard customer assets.  Indeed, granting the requested relief may help protect other customers of Blockfills who may be similarly situated to Plaintiff.

### D. DOMINION IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BASED ON FED. R. CIV. P. 65

As shown above, Dominion satisfies all requirements for a temporary restraining order and preliminary injunction to Fed. Civ. P. 65.  *Cf. Local 1814*, 965 F.2d at 1228 (the "standards which govern consideration of an application for a temporary restraining order [] are the same standards as those which govern a preliminary injunction.").  *See* also Declaration of Anna Lea McNerney, dated March 2, 2026 ("McNerney Decl."), ¶¶3-6.

Therefore, Dominion seeks a temporary restraining order and preliminary injunction to preserve the Dominion Property Assets during the pendency of this action.  In particular, Dominion seeks a temporary restraining order and preliminary injunction (a) enjoining Blockfills from dissipating Dominion's 70.5556739914 Bitcoin or any other assets belonging to Dominion and in the custody or control of Blockfills during the pendency of this action, (b) enjoining Blockfills from making any fraudulent conveyances or transfers of assets with intent to hinder, delay, or defraud Dominion or frustrate the enforcement of any judgment that may be rendered in Plaintiff's favor, (c) enjoining Blockfills from transferring any assets or funds currently held in the United States to any individual or entity outside of the United States; and (d) requiring Blockfills to

provide a full accounting of all customer funds and assets, including Dominion's Bitcoin assets, and to segregate and maintain such assets in a separate account.

## II.  DOMINION IS ENTITLED TO PRE-JUDGMENT ATTACHMENT UNDER CPLR SECTIONS 6201(1) AND 6201(3)

Attachment is available in federal court "under the law of the state where the court is located." Fed. R. Civ. P. 64.  Under New York law, Section 6201 of the CPLR permits a court to order a pre-judgment attachment which "bars any sale, assignment or transfer of, or any interference with the property attached." *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 269 (2d Cir. 2022) (quoting *Capital Ventures Int'l v. Republic of Argentina*, 652 F.3d 266, 270 (2d Cir. 2011)); *BSH Hausgeräte GMBH v. Kamhi*, 282 F. Supp. 3d 668, 671 (S.D.N.Y. 2017).

An order of attachment may be granted when, among other things, the "defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state" or the "defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts".  CPLR 6201(1) and (3).  To prevail on a motion for attachment, the plaintiff must also "show by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits . . . and that the amount demanded from the defendants exceeds all counter-claims  known to the plaintiff."  CPLR 6212.

Here, Dominion has shown—by affidavit and through other evidence—that it is highly likely to succeed on the merits of at least one, if not all of its claims against Blockfills.  *Supra* 11-17 and Gurevich Aff.  Moreover, Dominion knows of no counterclaims by Blockfills.  Gurevich Aff. 50.

Further, Dominion's has sufficiently alleged (with supporting written and affidavit evidence) that Blockfills has acted with intent to defraud its customers, including Dominion, by commingling customer funds and misappropriating them for its own uses. *Supra* 4-8. Despite discovering the misappropriation in August 2025, Blockfills concealed the misappropriation from its customers for approximately six months, a delay which further calls into question Blockfills' motives and fraudulent intent. What is more, Blockfills has admitted that the misappropriation is ongoing. *Supra* 8. Without attachment, the risk is high (if not certain) that Blockfills will continue to use the commingled customer assets (including the Dominion Property Assets) to pay for its operational costs, including for the defense of this action. For this reason alone, the Court should issue an order of attachment pursuant to CPLR 6201(3).

In addition, Blockfills is also a foreign corporation not authorized to do business in the state of New York pursuant to CPLR 6201(1). Blockfills is incorporated in the Cayman Islands. Gurevich Aff. Exhibit 1 (Application Agreement). As of March 2, 2026, a search for Reliz Ltd., Blockfills and Blockfills.com showed no such company being registered to do business in New York. McNerney Decl. ¶2. This heightens the risk that Blockfills will have removed any remaining assets from the reach of this Court and its sister district courts.

For each of these reasons, the Court should issue an order of attachment pursuant to Fed. R. Civ. P. 64 and CPLR 6201(1) and 6201(3) in an amount sufficient to satisfy Dominion's claims.

## **CONCLUSION**

Both federal and New York law authorize this Court to preliminarily restrain, at a bare minimum, the Dominion Property Assets. Therefore, Dominion respectfully requests that the Court issue an order granting the following relief:

a.     Granting a temporary restraining order and preliminary injunction enjoining Blockfills, its officers, directors, agents, employees, and all persons acting in

concert with them, from dissipating, depleting, transferring, encumbering, selling, assigning, or otherwise disposing of the Dominion Property Assets (in particular Dominion's 70.5556739914 Bitcoin) or any other assets belonging to Dominion and in the custody or control of Blockfills;

b.  Enjoining Blockfills from making any fraudulent conveyances or transfers of assets (including, without limitation, the Dominion Property Assets) with intent to hinder, delay, or defraud creditors or frustrate the enforcement of any judgment that may be rendered in Plaintiff's favor;

c.  Enjoining Blockfills from transferring any assets or funds currently held in the United States to any individual or entity outside of the United States;

d.  Requiring Blockfills to provide a full accounting of all customer funds, including Dominion's Bitcoin assets, and to segregate and maintain such assets in a separate account;

e.  Granting pre-judgment attachment of Blockfills' property pursuant to CPLR sections 6201(1) and 6201(3) in an amount sufficient to satisfy a judgment entered on Dominion's claims;

f.  Awarding Dominion its costs, expenses, and reasonable attorneys' fees incurred in connection with this motion; and

g.  Granting such other and further relief as the Court deems just and proper.

Dated:    New York, New York                    Respectfully submitted,
          March 2, 2026

                                                SULLIVAN & WORCESTER LLP
                                                By: */s/ Anna Lea McNerney*
                                                     David Danovitch
                                                     Anna Lea McNerney
                                                     Christopher Shields
                                                1251 Avenue of the Americas, 19th Floor
                                                New York, New York 10020
                                                Telephone:  (212) 660-3000
                                                ddanovitch@sullivanlaw.com
                                                amcnerney@sullivanlaw.com
                                                cshields@sullivanlaw.com

                                                     Michael T. Dyson (*pro hac vice pending*)
                                                1666 K Street, NW, 7th Floor
                                                Washington, D.C. 20006
                                                Telephone: (202) 775-1200
                                                mdyson@sullivanlaw.com

                                                *Attorneys for Plaintiff Dominion Capital, LLC*

## CERTIFICATION OF COMPLIANCE

I, Anna Lea McNerney, an attorney duly admitted to this Court, hereby certify that the foregoing memorandum of law contains 6,425 words, excluding the exempted parts of the memorandum.  In preparing this certification, I have relied on the word count of the word processing program used to prepare this document.

Dated: New York, New York
     March 2, 2026                         By: */s/ Anna Lea McNerney*
                                              Anna Lea McNerney